UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:                                           Case No. 07-46660
                                               Chapter 7
     KAROL SUE O'CONNOR,              Honorable Walter Shapero

                    Debtor.
_____/

CHASE BANK USA, N.A.,
Plaintiff,

v.                                                               Adv. Pro. No. 07-5933

KAROL SUE O'CONNOR,
Defendant.

_____/

**OPINION DENYING EXISTENCE OF PRESUMPTION UNDER § 523(a)(2)(C)(i)(II)**

**I. Introduction**

Before the Court is the preliminary to a trial under § 523(a)(2) issue of whether or not the transactions involved in this proceeding are "cash advances" within the meaning of 11 U.S.C. § 523(a)(2)(C)(i)(II), and therefore presumed to be nondischargeable. Section 523 creates a presumption of nondischargeability for "cash advances" exceeding $750 that are obtained by an individual debtor on or within seventy days of the order for relief. The Court concludes the three transactions at issue are not "cash advances" as contemplated by § 523. Accordingly, they will not be presumed to be nondischargeable under § 523(a)(2)(C)(i)(II) and the matter will go to trial on that basis.

1

## II. Background

On April 4, 2007, the Debtor filed a voluntary Chapter 7 petition. Three transactions took place prior to the filing. On February 1, 2007, sixty-two days prior to filing the petition, two debts were incurred on Debtor's credit card: (1) one for $5,000.67, and (2) a second for $2,370.40. Fourteen days later, and forty-eight days before the Debtor filed for bankruptcy, a third debt of $3,603.00 was incurred.[1] All three transactions were incurred in the same manner. In each instance, the Debtor called Chase Bank customer service and requested a balance transfer, i.e.: transferring debts owed by Debtor to other credit card issuers to an obligation owed Chase Bank under Debtor's Cardmember Agreement with Chase Bank. The Debtor's Chase Bank account statement reflecting each transaction characterizes all three as "balance transfers."

The Debtor's Chase Cardmember Agreement variously defines both "balance transfers" and "cash advances", and notes the corresponding fees associated with each. Under the heading "Types of Transactions" the following appears:

> **Balance Transfers:** You may transfer balances from other accounts or loans with other credit card issuers or other lenders to this account, or other balance transfers we allow. But you may not transfer balances to this account from other accounts with us or any of our related companies. If a portion of a requested balance transfer will exceed your available line, we may process a partial balance transfer up to your available credit line.
>
> **Cash Advances:** You may use your card to get cash from automatic teller machines, or from financial institutions accepting the card; or to obtain travelers checks, foreign currency, money orders, wire transfers or similar cash-like charges; or to obtain lottery tickets, casino gaming chips, race track wagers or similar betting transactions. . . .

---

[1] Each of the three charges was comprised of the charge itself and an associated fee. The February 1, 2007, transaction consisted of a charge of $4,925.67 plus $75.00 in fees. The second February 1, 2007, transaction consisted of $2,301.36 in charges plus $69.04 in fees. The February 15, 2007, transaction was comprised of $3,528.00 in charges and $75.00 in fees.

2

While the term "definition" is not used, separating the transactions by type, description and example conveys an intended meaning and differentiation between them that is tantamount to their definition. The Cardmember Agreement also outlines the finance charges for each type of transaction. Cash advances are subject to a three percent finance charge, a minimum charge of $10.00, and no cap. Balance transfers are also subject to the same three percent rate, but aren't subject to a minimum fee, and are capped at $75.00.

### III.  Analysis

Under § 523(a)(2)(A), a creditor must demonstrate by a preponderance of the evidence that the debt in question is nondischargeable. If it is shown that the presumption under § 523(a)(2)(C) applies, then the burden of going forward shifts to the debtor. *National City Bank v. Manning,* 280 B.R. 171, 179 (Bankr. S.D. Ohio 2002). The ultimate burden of proof at all times remains with creditor. *In Re Green*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003).

The term "cash advance" while undefined in § 523(a)(2)(C), is defined in Debtor's Cardmember Agreement. As noted by one court, the term is one which has grown out of a rapid growth and diversification of the credit services industry and accordingly is ever-expanding. *Chase Manhattan Bank USA, N.A. v. Poor*, 219 B.R. 332, 336 (Bankr. D. Maine 1998). The literal dictionary meaning of the word "cash" connotes coin, paper money, specie or similar media of exchange, and that of "advance" is the supplying of money or cash with the expectation or obligation of repayment. With those meanings the words taken together tend to approximate the description ascribed to that phrase in the quoted Cardmember Agreement between the parties. While the definition of the term in that agreement would not necessarily govern the meaning of the phrase in the statute, the widely used and likely mutually understood commercial nature, origins and use of the

3

language, together with the literal meaning of the words themselves give a strong indication of, and would tend to circumscribe or define, what the drafters of the statute likely intended. The balance transfers involved in this case would not come within that meaning. All that happened here was essentially the identity of the entity to which Debtor owed a preexisting debt was changed from one creditor to another, and the amount of that debt, except for the finance charges incident to the balance transfer transaction (which do not affect the result here), remained the same. Whatever value one might argue the Debtor might have received by way of for instance, a lower interest rate, or more favorable terms etc…, cannot under any reasonable stretch be considered as having been either "cash" or an "advance." While obviously not particularly decisive or important to the Court's decision, something else is worth mentioning. It would not be unreasonable to take into account the fact that by separately defining and distinguishing between "balance transfers" and "cash advances" in its own agreement and, as is also the case here, providing somewhat different additional finance charges for each, the Creditor was drafting its own agreement in conformity with its view of the meaning of the statute – a statute that was largely enacted for its benefit, or, as some say, at its behest.

Further analysis reinforces the foregoing conclusion. The standard for construing exceptions to discharge has been articulated in relation to § 523(a)(2)(C). The *Manning* Court stated that "to read the phrase cash advance broadly would erode a bedrock principle of bankruptcy law-that exceptions to discharge must be narrowly construed in order to ensure that honest debtors receive a fresh start." *Manning*, 280 B.R. at 183.

Section 523(a)(2)(C) was promulgated in 1985 in response to "unconscionable or fraudulent" conduct by debtors. The legislative history states:

4

> Section 523 is amended and expanded to address a type of unconscionable or fraudulent conduct not heretofore considered by the code-that of loading up. In many instances, a debtor will go on a credit buying spree in contemplation of bankruptcy. . . . The burden is upon the debtor to demonstrate that the debt was not incurred in contemplation of discharge in bankruptcy and thus a fraudulent debt. S.Rep No. 65, 98th Cong., 1st Sess. 58 (1985).

Courts have consistently found that transactions like these here do not fall into the category addressed by Congress, and accordingly Creditors should not receive the benefit of a presumption of nondischargeability. The *Manning* Court stated, a debtor's "transfer of her . . . card balance . . . cannot be fairly characterized as fraudulent or as part of a pre-bankruptcy buying binge." *Manning*, 280 B.R. at 181. In addition, the court in *Green* limited the applicability of the presumption to situations where a credit card or open-end credit plan was used to obtain cash, reasoning that the term "cash advance" was specific. *Green*, 296 B.R. at 179, 180. In rejecting an argument similar to Creditor's, the court in *In Re Cameron* stated that balance transfers did not constitute cash advances simply because the Debtor never received cash, but instead refinanced an existing debt. *In Re Cameron*, 219 B.R. 531 (Bankr. W.D. Mo. 1998).

The Court in *Manning* likewise characterized these balance transfers, regardless of their form, as attempts at debt management, stating "a balance transfer-be it accomplished through a form incorporated into a credit application, a telephone call, or by use of one of the plethora of 'access checks' that credit card issuers so readily provide their customers-is, ostensibly, an attempt at debt management." *Manning*, 280 B.R. at 182. As noted in *Thorp Credit, Inc. v. Smith*, the reason behind Congress' discouragement of loading up by debtors was to prevent the diminution of the estate and subsequently payment to creditors. *Thorp Credit, Inc. v. Smith*, 54 B.R. 299, 303 (Bankr. S.D. Iowa 1985).

5

## IV. Conclusion

For the foregoing reasons, the Court concludes the balance transfers were not "cash advances" within the meaning of the statute, and thus there exists no presumption of non-dischargeability. The proceeding shall proceed to trial on that basis. A status conference will be held on February 6, 2008, at 1:30 p.m., to set a trial schedule.

**Signed on January 15, 2008**

                                                 **/s/ Walter Shapero**
                                                 **Walter Shapero**
                                                 **United States Bankruptcy Judge**